STATE OF NORTH CAROLINA v. ROGER LEE CALDWELL

No. 12

(Filed 11 October 1977)

**1. Criminal Law § 5— defense of insanity—burden of proof on defendant**

In this jurisdiction insanity is an affirmative defense which must be proved to the satisfaction of the jury by every accused who pleads it, and *Mullaney v. Wilbur*, 421 U.S. 684, does not require reallocation of the burden of proof with respect to insanity so that the burden must rest upon the State.

**2. Burglary and Unlawful Breakings § 6.3; Rape § 18— first degree burglary— underlying felony of assault with intent to rape—instruction proper**

In a prosecution for first degree burglary, the trial court's instruction that "the choking and kissing and the straddling of a female person by a male person without her consent intending at the time to use whatever force might be necessary to have sexual intercourse with her, notwithstanding resistance she might make" was a correct definition of the offense of assault with intent to commit rape, and the court properly instructed the jury that in order to convict defendant of first degree burglary the State must prove beyond a reasonable doubt that defendant intended, at the time he entered the victim's apartment, to commit an assault with intent to rape.

DEFENDANT appeals from judgment of *Thornburg, J.*, at the 8 November 1976 Criminal Session, BURKE Superior Court.

Defendant was tried upon a bill of indictment charging that on 24 September 1975 in the nighttime defendant broke and entered the occupied sleeping apartment of Betty Barnette located at 106 Virginia Street, Morganton, North Carolina, with intent to commit a felony therein, to wit: assault with intent to commit rape.

The State's evidence tends to show that Betty Barnette, 26-year-old wife of Ernest (Eddie) Barnette, lived in an apartment at 106-C Virginia Street in Morganton with her husband and two small children. Her husband worked at Greak Lakes Carbon Company and usually came home about midnight. The Barnette apartment had three rooms on the ground level and three rooms on the second level.

Around midnight on 23 September 1975 Betty Barnette was asleep in an upstairs bedroom while her two children were sleeping in a separate room. She heard a knock at the front door and, thinking it was her husband, went downstairs to open the door. She asked "Who is there?" and a voice said "This is Eddie." She cracked the door and defendant was standing outside. She quickly pushed the door shut despite his efforts to prevent it. Defendant then entered the Barnette apartment through a front window located beside the door. Mrs. Barnette started screaming, ran upstairs and left the house through a window in the children's bedroom. Jumping from the roof to the ground, she injured her foot and could not get up. The defendant then jumped off the roof and, in the words of Mrs. Barnette, "he got me down on the ground and was half choking me to death and I had bruises all over me where he grabbed me. He kissed me and then he told me we had better leave, to get up and leave and at that time the next door neighbor came out. I saw the next door neighbor. The defendant just told me that I had better get up and to keep my mouth shut or he would kill me. . . . He was on top of me and choking me and he put his hand around my neck. He was in between my legs . . . and holding me down and he threatened me if I moved. He said he would kill me if I moved. . . . He kissed me on the mouth. I hit the ground after I jumped. I was hurt on the bottom of my foot. It was cut. I could not walk. Roger Michaux was the neighbor that came out there to see me. I was on the ground about five minutes with the defendant before Mr. Michaux came out there. I don't know what time the defendant left me there. He left because this Roger came out and told him to leave; that he had better leave

and get out of there, to leave me alone. After Roger Michaux told him that, the defendant just walked off."

Roger Michaux, 24-year-old black man, lived with his wife in Apartment 106-D Virginia Street in Morganton on 23 September 1975. The Michaux apartment was next door to Mrs. Barnette's. Roger Michaux had known defendant all his life. On two or three occasions defendant had passed through that area asking who lived in the neighborhood, and Mr. Michaux had mentioned the names of those living in the apartments, including the name of Betty Barnette and her husband. Roger Michaux testified that on the night in question, about midnight, he heard a lot of scuffling and opened his door to see what was happening. He saw Roger Caldwell who had Mrs. Barnette up against a wall and was pressing up against her. He told defendant to leave her alone but he ignored the warning and "went back to what he was doing." Mr. Michaux told him again to quit "before I have to stop you." Defendant then backed off and as he walked past Michaux he said: "Don't mention anything about this, man. Don't mention anything about what I saw. . . . You have not seen me, don't say anything about it." Defendant then disappeared and Michaux's wife came out of the Michaux apartment, "saw Betty and helped her."

Detective Dennis Short received a call at his home at approximately 1 a.m. on 24 September 1975 as a result of which he talked with Mrs. Barnette and she gave him a description of her assailant and told him what had occurred. Defendant was apprehended on the afternoon of the same day, taken to the police station and advised of his rights. Officer Short observed defendant walking around the police department and observed his expressions. Defendant walked normally and had a worried expression on his face. There was no odor of alcohol about him.

Defendant did not testify but offered evidence. Dr. James Groce, a psychiatrist at Dorothea Dix Hospital, testified that he examined defendant on 16 October 1975 and observed him over a period of time. Defendant's IQ was 91, and on the Competency Screening Test he scored 36, "well within the range of competency to stand trial." It was Dr. Groce's expert opinion, however, that it was "unlikely" that defendant knew the difference between right and wrong and the nature and consequences of his behavior on the night of 24 September 1975. Defendant's mother and Robert Hodges, an attorney who had previously represented defendant in other matters, testified that defendant appeared to be confused

following the episode in question, could not say why he was in jail, seemed unable to converse intelligently or to relate any of the facts concerning the incident.

The court submitted four permissible verdicts: Guilty of first degree burglary, guilty of non-felonious breaking or entering, not guilty by reason of insanity, or not guilty. Defendant was convicted of first degree burglary and sentenced to life imprisonment. He appealed to the Supreme Court assigning errors noted in the opinion.

*Rufus L. Edmisten, Attorney General, by James Wallace, Jr., Assistant Attorney General, for the State of North Carolina.*

*C. Gary Triggs, attorney for defendant appellant.*

HUSKINS, Justice.

Defendant contends the trial court erred by placing upon him the burden of proving to the satisfaction of the jury that he was insane at the time of the offense. This constitutes his first assignment of error.

[1] In this jurisdiction insanity is an affirmative defense which must be proved to the satisfaction of the jury by every accused who pleads it. "Since soundness of mind is the natural and normal condition of men, everyone is presumed to be sane until the contrary is made to appear. This presumption of sanity applies to persons charged with crime, but it is rebuttable. . . . These considerations give rise to the firmly established rule that the burden of proof upon a plea of insanity in a criminal case rests upon the accused who sets it up. But he is not obliged to establish such plea beyond a reasonable doubt. He is merely required to prove his insanity to the satisfaction of the jury." *State v. Swink*, 229 N.C. 123, 47 S.E. 2d 852 (1948). The quoted rule has been applied in numerous decisions of this Court including *State v. Willard*, 292 N.C. 567, 234 S.E. 2d 587 (1977); *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595 (1976); *State v. Shepherd*, 288 N.C. 346, 218 S.E. 2d 176 (1975); *State v. Caddell*, 287 N.C. 266, 215 S.E. 2d 348 (1975); *State v. Cooper*, 286 N.C. 549, 213 S.E. 2d 305 (1975).

Defendant argues, however, that *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975), requires reallocation of the burden of proof with respect to insanity so that the burden must henceforth rest upon the State. The argument is unsound. The constitutional correctness of our decisions is reinforced by the following language of the United States Supreme Court in *Patterson v.*

*New York*, --- U.S. ---, 53 L.Ed. 2d 281, 97 S.Ct. 2319 (decided 17 June 1977):

> "[I]n *Mullaney v. Wilbur*, 421 U.S. 684 (1975), the Court further announced that under the Maine law of homicide, the burden could not constitutionally be placed on the defendant of proving by a preponderance of the evidence that the killing had occurred in the heat of passion on sudden provocation. The Chief Justice and Mr. Justice Rehnquist, concurring, expressed their understanding that the *Mullaney* decision did not call into question the ruling in *Leland v. Oregon*, supra, with respect to the proof of insanity.
>
> Subsequently, the Court confirmed that it remained constitutional to burden the defendant with proving his insanity defense when it dismissed, as not raising a substantial federal question, a case to which the appellant specifically challenged the continuing validity of *Leland v. Oregon*. This occurred in *Rivera v. Delaware*, 429 U.S. 877 (1976), an appeal from a Delaware conviction which, in reliance on *Leland*, had been affirmed by the Delaware Supreme Court over the claim that the Delaware statute was unconstitutional because it burdend the defendant with proving his affirmative defense of insanity by a preponderance of the evidence. The claim in this Court was that *Leland* had been overruled by *Winship* and *Mullaney*. We dismissed the appeal as not presenting a substantial federal question. Cf. *Hicks v. Miranda*, 422 U.S. 332, 344 (1975)."

Thus enlightened, we conclude that the burden of proof with respect to defendant's plea of insanity was correctly placed upon the defendant. His first assignment of error is overruled.

[2] Judge Thornburg instructed the jury that "the choking and kissing and the straddling of a female person by a male person without her consent intending at the time to use whatever force might be necessary to have sexual intercourse with her, notwithstanding resistance that she might make," would be an assault with intent to commit rape. Defendant contends the court thereby erroneously defined the crime of assault with intent to commit rape and assigns the quoted instruction as error.

We note from the record that the court further instructed the jury that in order to convict defendant of first degree burglary the State must prove beyond a reasonable doubt that defendant intended, at the time he entered Mrs. Barnette's apartment, to commit an assault with intent to rape.

An examination of the challenged portion of the charge reveals no error. Immediately following the quoted portion, the jury was specifically instructed:

"So I instruct you, members of the jury, that if you find from the evidence, beyond a reasonable doubt, that on or about the 23rd and 24th of September 1975, the defendant Roger Lee Caldwell, broke and entered the sleeping apartment of Betty Jo Barnette without her consent in the nighttime and intending at that time to commit the crime of assault with intent to commit rape, and that Betty Jo Barnette was in the house when defendant broke and entered the sleeping quarters or apartment house, it would be your duty to return a verdict of guilty of burglary in the first degree. However, if you do not so find or if you have a reasonable doubt as to one or more of those things, you will not return a verdict of guilty of burglary in the first degree. If you do not find the defendant guilty of burglary in the first degree, then you will consider whether or not the defendant is guilty of non-felonious breaking or entering."

In our view the charge of the court correctly defined the offense of assault with intent to commit rape and properly applied the law relevant thereto with respect to the burglary charged in the bill of indictment. "Whether the ulterior criminal intent existed in the mind of the person accused, at the time of the alleged criminal act, must of necessity be inferred and found from other facts, which in their nature are the subject of specific proof. It must ordinarily be left to the jury to determine, from all the facts and circumstances, whether or not the ulterior criminal intent existed at the time of the breaking and entry. In some cases the inference will be irresistible, while in others it may be a matter of great difficulty to determine whether or not the accused committed the act charged with the requisite criminal purpose." *State v. Allen*, 186 N.C. 302, 119 S.E. 504 (1923); *accord, State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976); *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974). Defendant's second assignment is overruled.

Examination of the entire record impels the conclusion that defendant received a fair trial free from prejudicial error. Hence the verdict and judgment must be upheld. The sentence pronounced is within statutory limits. G.S. 14-52. If the punishment is deemed excessive, relief may be sought through the Board of Paroles.

No error.