STATE OF NORTH CAROLINA v. ROGER LAWRENCE WETMORE

No. 46

(Filed 4 December 1979)

1. **Criminal Law § 5— insanity—burden of proof on defendant**
    The burden of proving insanity is properly placed on the defendant in a criminal trial.

2. **Homicide § 23— instructions—no prejudice to defendant**
    In a prosecution of defendant for the murder of his father, defendant was not prejudiced by the trial court's use of the disjunctive "or" instead of the conjunctive "and" in connecting the elements of intent to kill and premeditation while instructing on first degree murder since the jury convicted defendant only of second degree murder; and defendant was not entitled to instructions on voluntary manslaughter or self-defense, and any error in those instructions given by the court therefore could not have been prejudicial to defendant.

DEFENDANT appeals from *Judge Hal Walker* at the 27 November 1978 Session of RANDOLPH Superior Court. Placed on trial for the first degree murder of his father, Edwin Hall Wetmore, defendant was convicted by a jury of second degree murder

and sentenced to life imprisonment.[1] He appeals pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by William Woodward Webb, Assistant Attorney General, for the State.*

*Robert M. Davis, Attorney for defendant appellant.*

EXUM, Justice.

The principal questions presented on this appeal are whether Judge Walker erred in placing the burden upon the defendant of proving insanity to the satisfaction of the jury and whether there was error in the instructions on voluntary manslaughter. Defendant also assigns as error various other portions of Judge Walker's jury instructions. On the insanity question we find no error in the instructions. On the other points we conclude that any error committed could not have prejudiced defendant in light of the evidence adduced and the verdict rendered.

The state's evidence tends to show that on the evening of 8 February 1974 after his parents had retired to their bedroom, defendant entered the bedroom and brutally stabbed his father to death with a hunting knife. He then dragged the body outside where he loaded it on a pickup truck. After placing his father's body in the truck, defendant, believing his father was not yet dead, attempted to decapitate the body with an ax. With his mother following in a car, defendant then drove the truck to Kelsey Park, a vacant area near the Veterans Administration Hospital in Salisbury. The body was left in the pickup truck at Kelsey Park in order to make it appear that a mental patient had killed defendant's father. Defendant's brother, Jerry Wetmore, accompanied by defendant, located the body on 11 February 1974 and reported the matter to the Salisbury Police Department.

Defendant's evidence as to what happened does not conflict with that of the state. He relies entirely on the defense of insani-

---

1. This is defendant's second appeal from his second trial. At the July 1974 Session of Rowan Superior Court before Judge Peele, defendant was convicted of murder in the first degree and sentenced to death. A majority of this Court found no error in these proceedings. *State v. Wetmore*, 287 N.C. 344, 215 S.E. 2d 51 (1975). The United States Supreme Court, on defendant's petition for certiorari, vacated the judgment of this Court insofar as it left undisturbed the death penalty and ordered that the case be remanded to this Court "for further proceedings in light of *Mullaney v. Wilbur*, 421 U.S. 684 (1975)." *Wetmore v. North Carolina*, 428 U.S. 905 (1976). This Court on 12 September 1977, having reconsidered the case in light of *Mullaney v. Wilbur*, 421 U.S. 684 (1975), and *Hankerson v. North Carolina*, 432 U.S. 233 (1977), ordered that defendant be awarded a new trial. *State v. Wetmore*, 293 N.C. 262, 248 S.E. 2d 338 (1977). Defendant's present appeal is from the new trial so ordered.

ty. Defendant, himself, testified that he "received orders and directions from Major Richard Ziron to kill my father." He claimed that he did not know whether it was right or wrong to kill his father "because of Warren Ziron" and that "Warren Ziron had control of me and I was not able to know right from wrong at the time this happened." Dr. Richard Felix testified that he was a staff psychiatrist at Central Prison where he had occasion to observe defendant from July 1975 to about June 1977. In his opinion defendant suffered from chronic and severe schizophrenia. Dr. Bob Rollins, Director of Forensic Psychiatry at Dorothea Dix Hospital and Director of Forensic Services, Division of Mental Health Services, North Carolina Department of Human Resources, testified that he had observed and examined defendant on two occasions at Dorothea Dix. In his opinion defendant on 9 February 1974 was unable to know the difference between right and wrong and to know that the killing of his father was wrong.

The state, in rebuttal, offered testimony of defendant's mother, and brother, Jerry. Defendant's mother said that at the time of the killing she did not observe any "abnormal behavior of any sort" on defendant's part and that she believed defendant knew what he was doing and was capable of distinguishing right from wrong. Defendant's brother, Jerry, testified that in his opinion defendant at the time in question "was very capable of knowing right from wrong." He further testified that he asked defendant at Dorothea Dix Hospital, "Are you going to try to beat the rap by playing insane?" The defendant's reply was, "Yes, wouldn't you?"

[1] In his instructions to the jury Judge Walker placed the burden on the defendant of proving insanity to the satisfaction of the jury. Defendant excepts to this instruction and assigns it as error on appeal.

Defendant recognizes that "in this jurisdiction insanity is an affirmative defense which must be proved to the satisfaction of the jury by every accused who pleads it." *State v. Caldwell*, 293 N.C. 336, 237 S.E. 2d 742 (1977), *cert. denied*, 434 U.S. 1075 (1978). Defendant also concedes there is no constitutional due process requirement that the burden of disproving insanity, or proving sanity, be placed on the state under the doctrine of *Mullaney v. Wilbur*, 421 U.S. 684 (1975). This argument was rejected by us in

*Caldwell* wherein, 293 N.C. at 340, 237 S.E. 2d at 744, we relied on the following language of the United States Supreme Court in *Patterson v. New York*, 432 U.S. 197, 205 (1977):

> "[I]n *Mullaney v. Wilbur*, 421 U.S. 684 (1975), the Court further announced that under the Maine Law of homicide, the burden could not constitutionally be placed on the defendant of proving by a preponderance of the evidence that the killing had occurred in the heat of passion on sudden provocation. The Chief Justice and Mr. Justice Rehnquist, concurring, expressed their understanding that the *Mullaney* decision did not call into question the ruling in *Leland v. Oregon*, supra, with respect to the proof of insanity.
>
> Subsequently, the Court confirmed that it remained constitutional to burden the defendant with proving his insanity defense when it dismissed, as not raising a substantial federal question, a case to which the appellant specifically challenged the continuing validity of *Leland v. Oregon*. This occurred in *Revera v. Delaware*, 429 U.S. 877 (1976), an appeal from a Delaware conviction which, in reliance on *Leland*, had been affirmed by the Delaware Supreme Court over the claim that the Delaware statute was unconstitutional because it burdened the defendant with proving his affirmative defense of insanity by a preponderance of the evidence. The claim in this Court was that *Leland* had been overruled by *Winship* and *Mullaney*. We dismissed the appeal as not presenting a substantial federal question. Cf. *Hicks v. Miranda*, 422 U.S. 332, 344 (1975)."

Defendant here contends that as a matter of sound policy in the prosecution and defense of criminal cases this Court ought to change the rule so that the state must bear the burden of proving defendant's sanity in any case in which the issue is properly presented. We decline to change the rule. Our holding in *Caldwell*, based itself on numerous prior holdings, was reaffirmed in *State v. Connley*, 295 N.C. 327, 245 S.E. 2d 663 (1978), *vacated on other grounds and remanded*, 99 S.Ct. 2046 (1979), and *State v. Leonard*, 296 N.C. 58, 248 S.E. 2d 853 (1978). In *Leonard, id.* at 64, 248 S.E. 2d at 856, this Court unanimously stated:

> "We have repeatedly held, and we again reiterate the rule, that the burden of proving insanity is properly placed

on the defendant in a criminal trial. Furthermore, a defendant must establish his insanity to the satisfaction of the jury if it is to provide a defense to a criminal charge."

We continue to adhere to this view. We recognize that reasonable arguments can be made for the rule for which defendant contends as well as against it. Some of these are set out with supporting authorities in the majority and dissenting opinions in *Bradford v. State*, 234 Md. 505, 200 A. 2d 150, 17 A.L.R. 3d 134 (1964). The matter is given full treatment in Annot., "Modern Status of Rules as to Burden and Sufficiency of Proof of Mental Irresponsibility in Criminal Case," 17 A.L.R. 3d 146 (1968), as supplemented to August 1979. This Annotation as supplemented demonstrates that our sister states are about evenly divided on the question with no observable trend in one direction or the other. Policy arguments on the question seem to be fairly balanced and do not in themselves clearly favor one approach over another. Therefore, while we prefer our long standing, common law rule as being much the sounder and do not wish that it be changed at all, any suggestion that it be changed is more appropriately addressed to the Legislature. This assignment of error is overruled.

Defendant also assigns as error several other portions of Judge Walker's jury instructions. His brief on these points is so cryptic and lacking in authority that it is difficult to ascertain precisely what his arguments are. He seems to contend that Judge Walker: (1) improperly defined first degree murder; (2) failed to place the burden of proof on the state as to the elements of first degree murder in one portion of his instructions; (3) confused first and second degree murder so that the jury could have convicted defendant of first degree murder upon finding only the elements of second degree murder; and (4) improperly instructed the jury on voluntary manslaughter so as to confuse this crime with involuntary manslaughter.

On oral argument defendant's counsel conceded that the more he studied Judge Walker's instructions on the contested points, the less persuasive he found his arguments against them to be. So it has been with our own analysis.

[2] We have carefully reviewed the entire charge. When viewed contextually, particularly in the light of the evidence presented

and the real dispute existing in this case, Judge Walker's jury instructions were not prejudicially erroneous. It is true that in listing the elements of first degree murder Judge Walker used the disjunctive "or" instead of the conjunctive "and" in connecting the elements of intent to kill and premeditation. His instructions on what the jury must find in order to convict the defendant of voluntary manslaughter were confusing.[2] We suggest that the instructions on this phase of the case would have been clearer if given as follows:

> "If you do not find the defendant guilty of second degree murder, you must consider whether he is guilty of voluntary manslaughter. As to this, if you find from the evidence beyond a reasonable doubt that on or about 9 February 1974 Roger Wetmore intentionally and without justification or excuse stabbed Edwin Wetmore and thereby proximately caused Edwin Wetmore's death, you would return a verdict of guilty of voluntary manslaughter. Such a finding on your part would mean that the state has failed to prove beyond a reasonable doubt that the defendant acted with malice, that is, not in the heat of passion upon adequate provocation.

> You would also return a verdict of guilty of voluntary manslaughter upon finding beyond a reasonable doubt that Roger Wetmore intentionally stabbed his father, Edwin Wetmore, and thereby proximately caused his father's death even if the state has failed to prove beyond a reasonable doubt that Roger Wetmore did not act in self-defense, provided that the state has proved beyond a reasonable doubt that in the exercise of self-defense Roger Wetmore used excessive force or was the aggressor although without murderous intent, in bringing on the affray with his father.

2. He said:

"Then you must determine if he is guilty of voluntary manslaughter. If you find from the evidence beyond a reasonable doubt, that on or about the 9th day of February, 1974, Roger Wetmore intentionally and without justification or without excuse stabbed, or cut, or hacked Edwin Wetmore, thereby proximately causing Edwin Wetmore's death on or about the 9th of February, 1974, but the State has failed to satisfy you beyond a reasonable doubt that he acted with malice, if it has failed beyond a reasonable doubt that Roger Lawrence Wetmore did not act in the heat of passion upon adequate provocation, or if it failed to satisfy you beyond a reasonable doubt that Roger Wetmore did not act in self-defense, but the State has proved beyond a reasonable doubt that Roger Wetmore used excessive force in his self-defense, or if he was the aggressor in bringing on the dispute with his father it would be your duty to return a verdict of guilty of voluntary manslaughter. If you have a reasonable doubt as to one of those things, you would not return a verdict of guilty of voluntary manslaughter, but you would return the fourth verdict of not guilty."

> If, however, you do not find beyond a reasonable doubt that Roger Wetmore either intentionally stabbed his father or that such stabbing was a proximate cause of his father's death you would return a verdict of not guilty. Likewise if the state has failed to prove beyond a reasonable doubt that Roger Wetmore did not act in self-defense and has likewise failed to prove beyond a reasonable doubt that he used excessive force or was the aggressor, you would return a verdict of not guilty."

The propriety of this instruction is predicated, of course, on the assumption that all terms of art have been appropriately defined and there is evidence in the case of heat of passion on adequate provocation and self-defense.

Because of his long experience and ability we are satisfied that Judge Walker's instructions as they appear in the record have suffered in transcription.[3] Be that as it may we find no prejudicial error in these instructions.

Defendant's own testimony makes out a classic case of first degree murder if one assumes, of course, that defendant was sane at the time he committed the acts. He testified:

> "I laid there for an hour and considered it before I took the knife into my father's bedroom. I was debating whether or not to do it for about an hour. At the time I went in the room with the knife I intended to kill my father. He was buried. I killed him. I knew he should be dead when I stabbed him the seventh time in the heart area and twisted the knife."

And further:

> "Before I killed my father I thought all of these things out as to how I was going to dispose of the body. When I knocked on my father's door that night I told him he had a phone call and to get up that he had to go to the hospital. The reason for that was he had his pajamas on and I wanted him to put his work clothes on. After he put his work clothes on I at-

---

3. On oral argument defendant's counsel in response to a question from the bench on this point conceded that the court reporter for this case was new and inexperienced. Shortly after this trial she moved to another jurisdiction and defendant had considerable difficulty in obtaining the transcript.

tacked him, stabbed him and chopped his head off. My mother washed the shoes that I had on to get the blood off of them."

While this testimony makes out all the elements of first degree murder, the jury convicted defendant only of second degree murder. Consequently defendant could not have been prejudiced by error, such as there was, on the instructions relating to first degree murder. The jury, in effect, acquitted him of that charge.

Defendant was not entitled to the instructions on voluntary manslaughter. There is no evidence in the case that defendant acted either in the heat of passion on adequate provocation or in self-defense. There is some evidence offered by the state tending to show that defendant and his father fought before the killing took place. This evidence appears from the testimony of defendant at his former trial offered by the state against him here. Even so all of the evidence indicates that defendant was the aggressor in bringing on the fight with his father, if one occurred, and that he intended to kill his father at the time he entered into the affray. We said in *State v. Potter*, 295 N.C. 126, 144, 244 S.E. 2d 397, 409, n. 2 (1978), relying on *State v. Crisp*, 170 N.C. 785, 790, 87 S.E. 511, 513 (1916):

> "If . . . one brings about an affray with the intent to take life or inflict serious bodily harm, he is not entitled even to the doctrine of imperfect self-defense; and if he kills during the affray he is guilty of murder. '[I]f one takes life, though in defense of his own life, in a quarrel which he himself has commenced with intent to take life or inflict serious bodily harm, the jeopardy into which he has been placed by the act of his adversary constitutes no defense whatever, but he is guilty of murder. But, if he commenced the quarrel with no intent to take life or inflict grievous bodily harm, then he is not acquitted of all responsibility for the affray which arose from his own act, but his offense is reduced from murder to manslaughter.' *State v. Crisp* . . . 170 N.C. at 793, 87 S.E. at 515."

That Judge Walker thought he should give the defendant the benefit of instructions on voluntary manslaughter and self-defense is understandable. Such instructions were given at defendant's first trial. We ordered a new trial for defendant because of a

*Mullaney* error in these very instructions. *See* n. 1, *supra.* Evidence, however, at defendant's first trial was somewhat different from the evidence presented here. As described in this Court's recitation of the facts in the former proceeding, 287 N.C. at 346, 215 S.E. 2d at 52, the state's evidence tended to show that the deceased and his wife went to bed about 9:00 or 9:30 p.m. on 8 February 1974. "About 11:30 p.m. they were awakened by defendant's knocks on their locked bedroom door. When the door was opened, defendant entered and told his father to put on his clothes because they were going to the VA Hospital. Defendant called his father a 'queer' and they began fighting. At first the two men fought with their fists, but defendant procured a scout knife and stabbed his father 'more than once.'" This evidence would have required instructions on at least a killing in the heat of passion if not also on self-defense.

In the instant record the state's evidence comes in differently. The state does not offer in its case in chief the testimony of defendant's mother as it did at the prior trial. In order to establish what happened when defendant entered his father's bedroom, the state here relies on defendant's out-of-court statements to investigators and his testimony at his former trial. According to defendant's out-of-court statement, related here by State Bureau of Investigation Special Agent Jack B. Richardson, defendant "said he went and knocked on the door of his father's bedroom and that his father came to the door; and that he told his father to put on his clothes that they were going somewhere; and that his father put his clothes on; that he, his father, put his clothes on and when he did that, he started hitting his father and his father fell to the floor and he began crying like a baby; he stated, 'I then butchered him up; I used my hunting knife.'" According to defendant's testimony at his prior trial, offered here by the state, the event occurred as follows: "On the night of February 8, 1974 . . . I was at home with my mother and my stepfather. About midnight I got up and knocked on their door. I did not have a knife with me then. My stepfather came to the door. I don't remember what I said. I went to the door for the purpose of killing him."

There is, consequently, no evidence in this record offered either by the state or defendant which entitles defendant to the benefit of instructions on voluntary manslaughter or self-defense.

Any error in these instructions, consequently, could not be prejudicial. *State v. Freeman*, 275 N.C. 662, 170 S.E. 2d 461 (1969).

Defendant's assignments of error relating to these portions of the instructions are, consequently, overruled. In the trial we find

No error.