STATE OF NORTH CAROLINA v. JEFFREY STEVEN HEPTINSTALL AKA JEFFERY HEPINSTALL

No. 304A82

(Filed 7 September 1983)

1. **Criminal Law § 5.1— competency to stand trial—sufficiency of evidence**

In a prosecution for first degree murder, the trial court did not err in finding defendant competent to stand trial, although there was conflicting testimony, where there was expert testimony which indicated defendant had a good memory both present and distant; defendant had not suffered delusions for "five or six years," defendant told a psychiatrist about "the charges pending against him and some of the details," and defendant was "alert and well aware of his surroundings as to person, place and time." This testimony supported the trial court's findings which in turn supported the trial court's conclusions that defendant understood "the nature of the proceedings against him," his situation with regard to the proceedings, and that he was able to assist appropriately in his defense "should he choose to do so."

2. **Criminal Law § 5— mental capacity at time of trial—no duty of trial court to reopen capacity question**

Although portions of defendant's testimony at both phases of his trial were bizarre and nonsensical, almost all of his testimony during the guilt phase indicated that defendant was accurately oriented regarding his present circumstances in that he knew the offenses with which he was charged, he was

able to recall with great detail past events, and he was able to respond meaningfully to questions put to him regarding the present charges against him. Therefore, viewing defendant's testimony as a whole, in light of some of the purposes for which the testimony was offered, and taking into account defendant's high intelligence and tendency to be manipulative, the Court concluded the testimony would not have suggested to the trial court that defendant lacked capacity to proceed, and there was no duty of the trial court on its own motion to reopen the question.

**3. Criminal Law § 5— insanity defense—burden of proof**

The trial court properly instructed the jury that defendant bore the burden of proving to their satisfaction he was insane at the time of the offenses.

APPEAL from judgments entered by *Judge Preston Cornelius* at the 18 January 1982 Session of PITT Superior Court after defendant was found guilty by a jury of first degree murder, armed robbery, and felonious breaking or entering. After a sentencing hearing, Judge Cornelius imposed judgments sentencing defendant to life imprisonment for the murder conviction, forty years' imprisonment on the robbery conviction, and ten years' imprisonment on the felonious breaking or entering conviction, all sentences to run consecutively. Defendant appeals his murder conviction as a matter of right pursuant to G.S. 7A-27(a) (1981). This Court on 1 June 1982 allowed his motion to bypass the Court of Appeals for review of the other convictions.

*Rufus L. Edmisten, Attorney General, by Ralf F. Haskell, Assistant Attorney General, for the state.*

*William D. Spence and Fred W. Harrison, attorneys for defendant appellant.*

EXUM, Justice.

Defendant raises three questions: whether the trial court erred in finding defendant competent to proceed to trial, in refusing to conduct a new hearing on defendant's competency after he testified, and in placing on defendant the burden of proving his insanity at the time of the incidents giving rise to the charges at issue. We conclude no error was committed and defendant received a fair trial.

Mrs. Rachel Albritton, a resident of the Lizzie community of Greene County,[1] was found by a neighbor in the yard of her home on 11 July 1981. She had been beaten and stabbed, but she was able to tell her neighbor and others summoned to the scene that her assailant was a large white man with a beard and mustache. She said he had beaten her and had stolen her car. Mrs. Albritton died from her injuries shortly after arriving at a local hospital.

Defendant was apprehended in the victim's car near New Bern about 7 p.m. on 11 July. At the time of his arrest defendant was an escapee from Maury Prison, a minimum security facility located a few miles from Mrs. Albritton's home. Defendant admitted at trial that he had been in Mrs. Albritton's home in search of food and had stolen her car; but he denied killing her.

During a voir dire on the issue of defendant's competency to proceed to trial, considerable evidence was adduced which indicated defendant had a significant history of mental illness. Specifically, defendant had been diagnosed as suffering from paranoid schizophrenia. Nevertheless, defendant was found competent to proceed to trial. The jury found defendant guilty of first degree murder of Mrs. Albritton on the basis of premeditation and deliberation. In so doing, they rejected his defense of insanity. The jury was unable to reach a unanimous recommendation on punishment for the murder conviction after deliberating for approximately five hours, and the foreman was of the opinion that the jury could not reach a determination on punishment within a reasonable time. Therefore, the trial court imposed a sentence of life imprisonment pursuant to G.S. 15A-2000(b).

[1] The first issue raised by defendant is whether the trial court erred in finding him competent to stand trial. The trial court held a lengthy voir dire in which various members of defendant's family testified regarding his behavior and mental stability during the ten years preceding the incidents in question. Defendant had exhibited bizarre behavior over the years and had been committed to Dorothea Dix Hospital and a mental institution in Florida

---

1. Although the offenses were committed in Greene County, the case was transferred for trial to Pitt County by Judge Napolean Barefoot on defendant's motion. Judge Barefoot concluded the transfer was necessary in order for defendant to receive a fair trial because of extensive pretrial publicity, and because Pitt County had accommodations for sequestering the jury should it be required.

on several occasions. In the opinions of the family members and others who knew him, defendant was not in his "right mind" and was not competent to aid in defending the charges against him.

Dr. James Groce, a forensic psychiatrist, testified he had examined defendant in Central Prison about five months before trial and again on 21 January 1982 during a recess in the trial. In Dr. Groce's opinion defendant was alert, aware of his surroundings and the charges against him, and had a good memory. He also appeared to be of normal intelligence, able to understand the seriousness of the charges against him and capable of assisting his attorneys in preparing his defense.

From the evidence presented, the trial court made findings which defendant admits "conform to the evidence." From these findings the trial court concluded defendant possessed the capacity to proceed to trial.

The test of a defendant's mental capacity to stand trial is set forth in G.S. 15A-1001(a) (1978):

> No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness . . . he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

This test had been stated in our cases before enactment of the statute as "whether [the defendant] has the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to co-operate with his counsel to the end that any available defense may be interposed." *State v. Propst*, 274 N.C. 62, 70, 161 S.E. 2d 560, 566 (1968) (quoting 21 Am. Jur. 2d, Criminal Law, § 63 [currently at § 96 (1981)]); *see also State v. McCoy*, 303 N.C. 1, 18, 277 S.E. 2d 515, 528 (1981); *State v. Cooper*, 286 N.C. 549, 565, 213 S.E. 2d 305, 316 (1975).

When the trial court, without a jury, determines a defendant's capacity to proceed to trial, it is the court's duty to resolve conflicts in the evidence; the court's findings of fact are conclusive on appeal if there is competent evidence to support them, even if there is also evidence to the contrary. *State v. Mc-*

*Coy, supra,* 303 N.C. at 18, 277 S.E. 2d at 528; *State v. Willard,* 292 N.C. 567, 575, 234 S.E. 2d 587, 592 (1977). In the instant case there was conflicting testimony on defendant's capacity to stand trial, but there was expert testimony which supported these findings of the trial court: Defendant, when examined by Dr. Groce in August 1981, "had a good memory . . . both present and distant"; stated he had not suffered delusions for "five or six years"; told Dr. Groce about "the charges pending against him and some of the details"; and was "alert and well aware of surroundings as to person, place and time." Defendant, when examined by Dr. Groce in January 1982 after his trial had begun, knew Dr. Groce "by name"; told Dr. Groce "he had been kept in prison until he had been brought to Pitt County four days ago"; told Dr. Groce "he was accused of killing a woman by stabbing her . . . thought her name was Rachel"; "understood he might go to prison for a long time"; mentioned the word "execution"; and "indicated he met with his lawyer on two occasions and was satisfied with his attorneys." These findings in turn support the trial court's conclusions that defendant understood "the nature of the proceedings against him," his situation with regard to the proceedings, and that he was able to assist appropriately in his defense "should he choose to do so." Thus, the trial court did not err when it concluded ultimately that defendant was competent to proceed to trial.

[2] Defendant next assigns as error the trial court's failure, on its own motion, to conduct further hearings on defendant's capacity to proceed with the trial after defendant's testimony, first at the guilt phase, then during the sentencing phase of the trial. Defendant argues that his testimony "was so bizarre and incoherent that the trial court, on its own motion, should have halted the trial and inquired into the state of Defendant's mental health . . . . Defendant's testimony, in and of itself, should have caused the trial court to question the Defendant's capacity to proceed."

The trial court has the power on its own motion to make inquiry at any time during a trial regarding defendant's capacity to proceed. General Statute 15A-1002(a) provides that this question "may be raised at any time by the prosecutor, the defendant, the defense counsel, or the court on its own motion." Indeed, cir-

cumstances could exist where the trial court has a constitutional duty to make such an inquiry.

> [A] conviction cannot stand where defendant lacks capacity to defend himself. *Drope v. Missouri*, 420 U.S. 162, 43 L.Ed. 2d 103, 95 S.Ct. 896 (1975); *Pate v. Robinson*, 383 U.S. 375, 15 L.Ed. 2d 815, 86 S.Ct. 836 (1966). '[A] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent.' (Emphasis added.) *Crenshaw v. Wolff*, 504 F. 2d 377 (8th Cir. 1974), *cert. denied*, 420 U.S. 966 (1975). *See Wolf v. United States*, 430 F. 2d 443 (10th Cir. 1970) ('bona fide doubt' as to competency).

*State v. Young*, 291 N.C. 562, 568, 231 S.E. 2d 577, 581 (1977).

We have carefully examined defendant's testimony at both phases of his trial. Portions of defendant's testimony at both phases were bizarre and nonsensical. These portions of his testimony occurred when he was asked questions calling for abstract reasoning and inquiring about his views on morality and religion. Almost all of his testimony during the guilt phase indicates that defendant was accurately oriented regarding his present circumstances. He knew the offenses with which he was charged. He was able to recall with great detail past events and was able to respond meaningfully to questions put to him regarding the present charges against him. He admitted that he entered the victim's home for the purpose of getting food and that he took her automobile. He denied killing her. Defendant's sentencing phase testimony was similarly responsive and sensible when it related to the charges against him. It became nonsensical and bizarre when the subject turned to matters of morality and religion.

We note that during the guilt phase defendant's testimony was, in part at least, directed toward establishing his insanity defense. During the sentencing phase it was directed, again in part, toward establishing the mitigating circumstances that defendant was under the influence of mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the law was impaired. *See* G.S. 15A-2000(f)(2) and (6) (Cum. Supp. 1981). Further, there was evidence in the case that defendant was both highly intelligent

and capable of manipulating other people. Indeed, the trial court in its judgments against defendant found "that this defendant has in the past been very manipulative and has bargained for privileges in return for accepting treatment."

Viewing defendant's testimony as a whole, in light of some of the purposes for which the testimony was offered, and taking into account defendant's tendency to be manipulative, we conclude the testimony would not have suggested to the trial court that defendant then lacked capacity to proceed. There was, therefore, no duty of the trial court on its own motion to reopen this question.

[3] Defendant's final argument is that the trial court erred in instructing the jury defendant bore the burden of proving to their satisfaction he was insane at the time of the offenses. Defendant concedes this Court has previously decided this issue against his position, but asks us to reconsider our precedents.

It is the long-standing common-law rule in North Carolina that "insanity is an affirmative defense which must be proved to the satisfaction of the jury by every accused who pleads it." *State v. Wetmore*, 298 N.C. 743, 745, 259 S.E. 2d 870, 872 (1979) (quoting *State v. Caldwell*, 293 N.C. 336, 339, 237 S.E. 2d 742, 744 (1977), *cert. denied*, 434 U.S. 1075 (1978)). In *Wetmore* the defendant also asked us to change the rule to require the state to bear the burden of proving the defendant's sanity when the issue has been properly raised. The Court declined to change our rule, believing it to be the better view while recognizing reasonable arguments could be made against it. *State v. Wetmore, supra,* 298 N.C. at 745-47, 259 S.E. 2d at 872-73. *See also State v. Leonard,* 296 N.C. 58, 248 S.E. 2d 853 (1978); *State v. Connley,* 295 N.C. 327, 245 S.E. 2d 663 (1978), *vacated on other grounds and remanded,* 441 U.S. 929 (1979). We again decline to change our rule, and hold the trial court did not err in the instructions.

No error.