State v. Carroll

STATE OF NORTH CAROLINA v. WILLIAM HUNT CARROLL

No. 83A85

(Filed 3 June 1986)

**1. Constitutional Law § 40— failure to appoint counsel—defendant not indigent**

The trial court did not err in failing to appoint counsel to represent defendant at trial where the court correctly determined that defendant was not indigent at the time of his trial.

**2. Criminal Law § 29.1— mental capacity to stand trial—inquiry not required**

The trial court had no obligation, *ex mero motu*, to conduct an inquiry to determine whether defendant had the mental capacity to stand trial or appear *pro se* where nothing in the record suggests that defendant suffered from any mental illness or defect as specified in N.C.G.S. § 15A-1001(a).

**3. Constitutional Law § 49 — sentencing hearing — waiver of counsel not voluntary**

Defendant's waiver of counsel at his sentencing hearing for two counts of first degree sexual offense was not voluntary and knowing where the trial judge had indicated that he would impose concurrent life sentences, the most favorable action within his power; defendant then indicated that he would appear *pro se*; when the State put on evidence that defendant had a prior conviction of assault on a female, the trial judge changed his mind and imposed consecutive life sentences; and defendant received no notice that the judge was not going to sentence him as the judge had previously indicated.

APPEAL by defendant from consecutive life sentences imposed by *Preston, J.,* at the 29 October 1984 Criminal Session of Superior Court, WAKE County. Heard in the Supreme Court 15 October 1985.

*Lacy H. Thornburg, Attorney General, by James B. Richmond, Special Deputy Attorney General, and Charles M. Hensey, Assistant Attorney General, for the State.*

*James L. Blackburn, for defendant-appellant.*

FRYE, Justice.

Defendant was convicted on 30 October 1984 on two counts of first degree sex offense. He brings three assignments of error before this Court. Because none of the assignments of error involve the facts of the crime itself, we will not discuss those facts in this opinion.

[1] As his first assignment of error, defendant asserts that he was entitled to appointed counsel, and the trial judge's failure to appoint counsel to represent him at trial deprived him of his constitutional rights. The State has no obligation to furnish a defendant with appointed counsel unless he is indigent. *State v. Turner,* 283 N.C. 53, 194 S.E. 2d 831 (1973); *State v. Hoffman,* 281 N.C. 727, 190 S.E. 2d 842 (1972). The trial court determined that defendant was not indigent at the time of his trial; our review shows that this determination was correct.

[2] Second, citing N.C.G.S. § 15A-1001(a), defendant argues that the trial court erred in failing, *ex mero motu,* to conduct an inquiry to determine whether defendant had the mental capacity to stand trial or appear *pro se.* We have carefully reviewed the entire record on appeal, and we find nothing to suggest that defend-

ant suffered from any "mental illness or defect" as specified in N.C.G.S. § 15A-1001(a) (1983). The trial court therefore had no obligation, *ex mero motu*, to conduct any inquiry on the subject. *See State v. Heptinstall*, 309 N.C. 231, 306 S.E. 2d 109 (1983); *cf. Meeks v. Smith*, 512 F. Supp. 335 (W.D.N.C. 1981).

[3] Finally, defendant argues that the trial court erred in sentencing him without giving him the opportunity to have counsel. Defendant waived his right to have counsel at trial and elected to appear *pro se*. At the sentencing hearing on 31 October 1984, defendant's relatives appeared in court with an attorney willing to represent defendant. Defendant was allowed to consult with his relatives and the attorney. He initially rejected the attorney's services.

The trial judge questioned him about this decision and told him anew that he did not recommend that defendant appear without a lawyer. The following exchange then occurred:

MR. CARROLL: May I ask you a question, Your Honor?

COURT: Yes, sir.

MR. CARROLL: What would you recommend that I do now?

COURT: I am not going to recommend to you anything. I don't recommend, you see, that you go through any of these proceedings without an attorney. I tell you that up front.

Well, let me say this to you before we go any further. Yesterday in your case I ordered a pre-sentence diagnostic study, which I could do under the statute. You had been convicted by that jury of two Class B felonies. You have. Then by virtue of this conviction you are facing two mandatory life sentences. It is mandagory [sic]. It is locked in. The sentence is already done. The Legislature did that. And the jury found you guilty and I have no choice as to what I do on the life sentences, save and except I had a choice to what I was going to do, whether or not to tack them on. Life and then after that another life sentence or to run them concurrently.

The second reason — and that's one of the questions I was going to pose to the diagnositc [sic] center as to what they would recommend.

The second reason was that I was going to ask them what medication and what treatment would they recommend so I could put that on the commitment so that when you get to prison they would be able to treat you in that vein. All right.

But over the evening, considering this case — and I don't take many cases home with me, but I took your case home with me. Understand? Mentally and so forth. I have decided that I am not going to tack these on. I would not take their recommendation in other words if they said tack them on. I am going to run them concurrently. So that is the first thing.'

And the second thing that I decided was that they would not be able to tell me anything that I cannot find out through the medical facilities at the prison and, therefore, I would not go through the procedure of having a pre-sentence diagnostic study and, therefore, I am not going to do that. I am going to — I will be glad to listen to you or your people. I will be glad to listen to the District Attorney at this sentencing hearing and then we will proceed to sentence. So having said that, again I tell you that you have the choice at the sentencing hearing . . . to have an attorney represent you . . . .

Defendant subsequently affirmed his decision to appear *pro se* at the sentencing hearing.

At the hearing, the State introduced evidence that defendant had a prior misdemeanor conviction of assault on a female. Defendant put on no evidence. The fact of defendant's prior conviction disturbed the trial judge, and he imposed consecutive life sentences instead of the concurrent sentences mentioned in his talk with defendant. Defendant received no notice that the judge was not going to sentence him as he had previously indicated.

A criminal defendant has the right to proceed without counsel if he or she so desires, but this waiver must be both voluntary and knowing. *Faretta v. California*, 422 U.S. 806, 45 L.Ed. 2d 562 (1975); *State v. Thacker*, 301 N.C. 348, 271 S.E. 2d 252 (1980). In the instant case, defendant could reasonably have understood the judge to be saying that he, the judge, had already made up his mind to give defendant the most favorable sentence within his power. Thus, there would have been nothing for an attorney to do

for defendant at the hearing, and his presence would have been a needless expense. When the judge changed his mind, an attorney's potential usefulness to defendant also changed. Defendant was not told about this change but was left under the belief that he would receive concurrent sentences. Under the facts of this case, we hold that defendant's waiver of counsel was not voluntary and knowing. It was therefore error for the judge to proceed to sentence defendant as he did. Because we cannot say that the error was harmless beyond a reasonable doubt, defendant is entitled to a new sentencing hearing.

Accordingly, we remand this case to the Superior Court, Wake County, for a new sentencing hearing.

Remanded for new sentencing hearing.