McGEE, Judge.
Antonio Alonzo Monroe (“Defendant”) was indicted for first-degree murder of Mario Davis (“Davis”), possession of a firearm by a felon, and for attaining the status of an habitual felon. A jury found Defendant not guilty of first-degree murder but guilty of possession of a firearm by a felon and of attaining the status of an habitual felon on 10 April 2013. Defendant appeals from judgments entered upon his convictions.
*564 The night before the offenses at issue, Defendant and Davis had an argument at the residence of Defendant’s uncle. Antwan Cobb (“Cobb”), a witness to the events, testified that “as we unlock the door to leave out, [Davis and another man] barge in[.]” An argument resulted, the police arrived, and the argument ended. The following day, 17 June 2011, Defendant and Davis had another brief argument outside the residence of Jah’Kwesi Gordon (“Gordon”). Davis told Defendant he was going to “turn the heat up on” him, and Davis then left with O’Brian Smith (“Smith”).
Shortly thereafter, Davis returned to the front yard of Gordon’s residence, along with Smith. There was conflicting evidence as to whether Davis had a gun when he returned. Cobb testified that Davis said he was “going to stay out here until the door come open.” Gordon retrieved a gun from his bedroom in the back of the house. While Defendant and Gordon were inside the house, Defendant took the gun from Gordon.
Gordon went outside the house to ask Davis to leave. Defendant remained in the house with the gun. Gordon testified that he was outside talking to Davis for less than five or ten minutes before Defendant came to the doorway. Gordon further testified that, when Defendant came to the doorway, “[h]e had a couple more words and then [Davis] hit” Defendant “towards the facial area.” Defendant then shot Davis five times. Defendant and Cobb left in Cobb’s car.
At trial, dining the charge conference, Defendant asked the trial court to instruct the jury on self-defense as to the charge of possession of a firearm by a felon. Defendant submitted the requested instruction in writing in a document titled “Request for Special Jury Instruction on Duress or Justification.” The trial court denied Defendant’s request for the special instruction.
Defendant argues on appeal that the trial court erred by failing to instruct the jury on self-defense as to the charge of possession of a firearm by a felon. This Court addressed this argument in State v. Craig, 167 N.C. App. 793, 606 S.E.2d 387 (2005), in which we noted that “[f]ederal courts have recently recognized justification as an affirmative defense to possession of firearms by a felon.” Id. at 795, 606 S.E.2d at 389 (citing U.S. v. Deleveaux, 205 F.3d 1292 (11th Cir. 2000)).
I. The Deleveaux Test
“[T]he Deleveaux court limited the application of the justification defense to 18 U.S.C. § 922(g)(1) cases (federal statute for possession of a firearm by a felon) in ‘only extraordinary circumstances.’ ” Craig, 167 N.C. App. at 796, 606 S.E.2d at 389 (quoting State v. Napier, 149 N.C. App. *565 462, 465, 560 S.E.2d 867, 869 (2002)). In Deleveaux, the United States Court of Appeals for the Eleventh Circuit cited three cases from other circuits, U.S. v. Paolello, 951 F.2d 537 (3rd Cir. 1991), U.S. v. Singleton, 902 F.2d 471 (6th Cir. 1990); cert denied, 498 U.S. 872, 112 L. Ed. 2d 158 (1990), and U.S. v. Perez, 86 F.3d 735 (7th Cir. 1996), to illustrate that the defense is available only in extraordinary circumstances. Deleveaux, 205 F.3d at 1297.
In Paolello, the United States Court of Appeals for the Third Circuit observed that the “restrictive approach is sound” and required that “the defendant meet a high level of proof to establish the defense of justification.” Paolello, 951 F.2d at 542. In Singleton, the United States Court of Appeals for the Sixth Circuit held that “a defense of justification may arise in rare situations” in prosecutions for possession of a firearm by a felon. Singleton, 902 F.2d at 472. The Court observed that, although the language of 18 U.S.C. § 922 “gives no hint of an affirmative defense of justification, Congress enacts criminal statutes ‘against a background of Anglo-Saxon common law.’ ” Id. (quoting U.S. v. Bailey, 444 U.S. 394, 415, 62 L. Ed. 2d 575, 594 n.11 (1980)).
“In Bailey, the Supreme Court held that prosecution for escape from a federal prison, despite the statute’s absolute language and lack of a mens rea requirement, remained subject to the common law justification defenses of duress and necessity.” Singleton, 902 F.2d at 472. “Similarly, the Congressional prohibition of possession of a firearm by a felon does not eliminate the possibility of a defendant being able to justify the possession through duress-or necessity.” Id.
“Common law historically distinguished between the defenses of duress and necessity.” Bailey, 444 U.S. at 409, 62 L. Ed. 2d at 590. “Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law.” Id. “While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor’s control rendered illegal conduct the lesser of two evils.” Id. at 409-10, 62 L. Ed. 2d at 590. “Modem cases have tended to blur the distinction between duress and necessity.” Id. at 410, 62 L. Ed. 2d at 590.
“[I]f a previously convicted felon is attacked by someone with a gun, the felon should not be found guilty for taking the gun away from the attacker in order to save his life.” Singleton, 902 F.2d at 472. The Court *566 held that the “justification defense for possession of a firearm by a felon should be construed very narrowly” and emphasized “that the keystone of the analysis is that the defendant must have no alternative — either before or during the event — to avoid violating the law.” Id. at 472-73.
In Perez, the United States Court of Appeals for the Seventh Circuit observed that the “defense of necessity will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened (the other might be the possessor of the gun, threatening suicide).” Perez, 86 F.3d at 737. The Court held that “the defendant may not resort to criminal activity to protect himself or another if he has a legal means of averting the harm.” Id.
Under Deleveaux, “a defendant must show four elements to establish justification as a defense” to the charge of possession of a firearm by a felon:
(1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury;
(2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct;
(3) that the defendant had no reasonable legal alternative to violating the law; and ■
(4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.
Craig, 167 N.C. App. at 796, 606 S.E.2d at 389 (quoting Deleveaux, 205 F.3d at 1297); see also U.S. v. Crittendon, 883 F.2d 326, 330 (4th Cir. 1989).
II. Standard for Reviewing the Evidence
Defendant argues that, when deciding whether to give a requested instruction, the trial court must consider the evidence in the light most favorable to the movant. As support, Defendant cites Long v. Harris, 137 N.C. App. 461, 467, 528 S.E.2d 633, 637 (2000), wherein the appeal arose from the denial of a requested instruction on a “sudden emergency” in a civil negligence action. The present appeal, by contrast, arises from the denial of a requested instruction on self-defense in a *567 criminal prosecution. We examine Napier, Craig, and other cases that have considered this issue for guidance.
In Napier, this Court stated only that the trial court must give the requested instruction, “at least in substance, if [it is] proper and supported by the evidence.” Napier, 149 N.C. App. at 463, 560 S.E.2d at 868. This Court did not state that the trial court must consider the evidence in the light most favorable to the movant. In Craig, this Court considered only the uncontroverted evidence. Craig, 167 N.C. App. at 796, 606 S.E.2d at 389.
la State v. Boston, 165 N.C. App. 214, 222, 598 S.E.2d 163, 167 (2004), this Court made no statement as to how the evidence must be viewed. In our analysis, we considered what the evidence tended to show and referred to what the State’s evidence tended to show. Id. Also, in State v. McNeil, 196 N.C. App. 394, 406, 674 S.E.2d 813, 821 (2009), this Court considered only that the evidence showed that the defendant “possessed the shotgun inside his home ... at which time there was no imminent threat of death or serious bodily injury.”
Thus, the only guidance from this Court is that the instruction must be “supported by the evidence.” Napier, 149 N.C. App. at 463, 560 S.E.2d at 868. This Court has never stated that, in prosecutions for possession of a firearm by a felon, the evidence must be viewed in the fight most favorable to a defendant.
However, in an appeal from a conviction for driving while impaired, this Court stated that “there must be substantial evidence of each element of the defense when ‘the evidence [is] viewed in the fight most favorable to the defendant’” to entitle the defendant to a necessity instruction. State v. Hudgins, 167 N.C. App. 705, 709, 606 S.E.2d 443, 446 (2005) (quoting State v. Ferguson, 140 N.C. App. 699, 706, 538 S.E.2d 217, 222 (2000) (regarding an instruction on manslaughter)). Thus, we review the evidence in the present case in the fight most favorable to Defendant, in order to determine whether there is substantial evidence of each element of the defense.
Though the case is not binding, we note that in Perez, the United States Court of Appeals for the Seventh Circuit stated that a “criminal defendant is entitled to an instruction on any defense for which there is some support in the evidence^” Perez, 86 F.3d at 736. The Court further stated that the United States “Supreme Court has made clear that the evidence must be sufficient to allow a reasonable jury to find the defense proved.” Id. (citing Mathews v. U.S., 485 U.S. 58, 99 L. Ed. 2d 54 (1988)).
*568 III. North Carolina Cases Applying Deleveaux Bv Assuming Arauendo That It Applies In North Carolina
In Napier, this Court noted that “the courts of this State have not recognized justification as a defense to a charge of possession of a firearm by a felon.” Napier, 149 N.C. App. at 464, 560 S.E.2d at 869. Nevertheless, the defendant in that case asked “this Court to expand the necessity defense and adopt the test for justification” set forth in Deleveaux. Id. (internal quotation marks omitted). This Court assumed, without deciding, that the Deleveaux rationale applied, but concluded that the evidence in Napier did “not support a conclusion that [the] defendant was under a present or imminent threat of death or injury.” Id. at 465, 560 S.E.2d at 869.
The evidence in Napier was that the defendant, a convicted felon who was involved in an on-going dispute with his neighbor and his neighbor’s son, “voluntarily walked across the street” to his neighbor’s property, while armed with a handgun. Id. The defendant stayed there for several hours and eventually shot the neighbor’s son in the arm. Id. This Court disregarded evidence of the neighbor’s son’s drug and alcohol use, his threats to the defendant, and recent shootings into the air by him over the defendant’s property in deciding whether the defendant was entitled to an instruction on justification. Id.
In Craig, the defendant continued to hold the firearm after leaving the altercation, while “not under any imminent threat of harm.” Craig, 167 N.C. App. at 796-97, 606 S.E.2d at 389. This Court concluded that “the evidence did not support giving a special instruction on justification because there was a time period where [the] [defendant was under no imminent threat while possessing the gun.” Id. at 797, 606 S.E.2d at 389.
In Boston, the evidence tended to show that the defendant and the victim “were engaged in an on-going conflict whereby in the week prior to the shooting, [the victim] threatened to kill [the] defendant, and on at least one prior occasion [the victim] fired a gun at [the] defendant.” Boston, 165 N.C. App. at 222, 598 S.E.2d at 167. This Court held that the trial court did not err in failing to instruct the jury on justification because the defendant “was observed walking through the apartment complex carrying a pistol.” Id. There was “no evidence to support the conclusion that [the] defendant was under an imminent threat of death or injury when he made the decision to carry the gun.” Id. at 222, 598 S.E.2d at 167-68.
In McNeil, this Court held that the evidence did not support giving a special instruction on justification where the evidence showed that the *569 defendant “possessed the shotgun inside his home and away from” the victim, “at which time there was no imminent threat of death or serious bodily injury.” McNeil, 196 N.C. App. at 406-07, 674 S.E.2d at 821.
Although unpublished, the analysis in State v. Ponder,_N.C. App._, 725 S.E.2d 674 (2012) (unpublished) (COA 11-1365) is instructive. This Court held that the defendant was “not under an imminent threat when he acquired the gun” in Ponder. Id., slip op. at 4. The defendant “chose to leave the residence and stand in the field, waiting to confront [the victim]. [The] [defendant could have telephoned the police before obtaining the weapon.” Id., slip op. at 5.
IV. Application To The Present Case
Consistent with the precedent from this Court, we assume arguendo, without deciding, that the Deleveaux rationale applies in North Carolina prosecutions for possession of a firearm by a felon. Nevertheless, the evidence in the present case, even when viewed in the light most favorable to Defendant, does not support a conclusion that Defendant, upon possessing the firearm, was under unlawful and present, imminent, and impending threat of death or serious bodily injury.
The evidence showed there had been an on-going dispute between Defendant and Davis. Defendant was at Gordon’s house on 17 June 2011. Davis and Smith later arrived at Gordon’s house, and Defendant and Davis subsequently argued outside Gordon’s house. The argument did not last long. Cobb, who witnessed the events on 17 June 2011, testified that Davis told Defendant he was going to “turn the heat up on” him. Cobb testified that the phrase meant: “I guess I’m going to shoot you, anything.” Cobb further testified that after Davis said that, Davis and Smith left and were gone for fifteen or twenty minutes.
Davis and Smith returned to Gordon’s house. Inside the house, Gordon retrieved a gun from his bedroom in the back of the house. While inside the house, Defendant took the gun from Gordon. Gordon went outside to ask Davis to leave. Defendant followed Gordon to the door and stood in the doorway of the residence. Gordon testified that he was outside talking to Davis for less than five or ten minutes before Defendant came to the doorway. Gordon further testified that, when Defendant came to the doorway, “[h]e had a couple more words and then [Davis] hit” Defendant “towards the facial area.” Defendant then shot Davis five times.
The uncontroverted evidence at trial showed that Defendant was inside Gordon’s house when Defendant took possession of a firearm. *570 Defendant’s primary support for his argument that the trial court erred in failing to give a special instruction is that the jury found Defendant not guilty of first-degree murder “under a theory of perfect self-defense.” However, the record does not indicate why the jury acquitted Defendant of first-degree murder — whether on the basis of self-defense or that the jury found that the State failed to carry its burden to prove beyond a reasonable doubt that Defendant murdered Davis. The record is silent as to this issue. Any speculation by this Court as to the reason or reasons for the jury’s decision to acquit Defendant of first-degree murder is therefore baseless.
Furthermore, the offenses of murder and possession of a firearm by a felon are separate and distinct criminal offenses. They share no elements in common. See N.C. Gen. Stat. §§ 14-415.1; 14-17 (2013); State v. Vance, 328 N.C. 613, 621-22, 403 S.E.2d 495, 501 (1991). Murder is a crime, defined as at common law. See Vance, 328 N.C. at 622, 403 S.E.2d at 501 (“as N.C.G.S. § 14-17 does not define the crime of murder, the definition of that crime remains the same as it was at common law”). By contrast, possession of a firearm by a felon is a statutory criminal offense of relatively recent vintage. The offenses are related in the present case only by the fact that the State sought to prove that Defendant used a firearm to shoot Davis.
Defendant’s subsequent contentions are that Davis “had instigated violence against [Defendant] before,” and that remaining inside Gordon’s residence would have been “no protection” because Davis had previously “barged in” to a residence where Defendant was located. However, the evidence does not compel a conclusion that, while inside the residence, Defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury. As previously discussed, this Court has disregarded evidence of the victim’s drug and alcohol use, threats, and recent shooting over the defendant’s property in Napier, 149 N.C. App. at 465, 560 S.E.2d at 869.
We thus cannot rely on the mere possibilities that (1) Davis may have been about to enter the residence and (2) that Davis then would have threatened death or serious bodily injury to Defendant. Defendant has failed to show that he was under “ ‘unlawful and present, imminent, and impending threat of death or serious bodily injury’ ” at the time he took possession of the firearm. Craig, 167 N.C. App. at 796, 606 S.E.2d at 389 (quoting Deleveaux, 205 F.3d at 1297).
Although the failure to make this showing is alone sufficient to hold that the trial court did not err in denying Defendant’s request for the *571 instruction, we note that Defendant also failed to show that he “had no reasonable legal alternative to violating the law[.]” Id. It was uncon-troverted that Defendant voluntarily armed himself and then walked to the doorway of the residence. Defendant has not shown there was no acceptable legal alternative other than arming himself with a firearm, in violation of N.C.G.S. § 14-415.1, and walking to the doorway of Gordon’s house.
Even viewing the evidence in the light most favorable to Defendant, we conclude that Defendant has not made the requisite showing of each element of the justification defense. Thus, even assuming arguendo, without deciding, that the rationale in Deleveaux applies in North Carolina prosecutions, the trial court did not err in refusing Defendant’s request to give a special instruction on self-defense as to the charge of possession of a firearm by a felon.
No error.
Judge STEELMAN concurs.