IN THE SUPREME COURT OF NORTH CAROLINA

No. 257PA18

Filed 28 February 2020

STATE OF NORTH CAROLINA

v.

SYDNEY SHAKUR MERCER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 818 S.E.2d 375 (N.C. Ct. App. 2018), vacating a judgment entered on 8 May 2017 by Judge Jesse B. Caldwell III in Superior Court, Mecklenburg County, and remanding for a new trial. Heard in the Supreme Court on 22 November 2019 in session in the Johnston County Courthouse in the City of Smithfield pursuant to section 18B.8 of chapter 57 of the 2017 North Carolina Session Laws.

*Joshua H. Stein, Attorney General, by Mary C. Babb, Assistant Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Daniel K. Shatz, Assistant Appellate Defender, for defendant-appellee.*

HUDSON, Justice.

Here, we must determine whether the Court of Appeals erred by concluding that the trial court committed prejudicial error when it failed to instruct the jury on justification as a defense for the charge of possession of a firearm by a felon. Because we conclude that the Court of Appeals did not err, we affirm.

I.    Factual and Procedural Background

On 30 March 2016 an altercation occurred outside defendant's home. The State and defendant presented different versions of that event at trial. Due to our standard of review in this case, we present the facts primarily from defendant's version of events.

Dazoveen Mingo and a group of approximately fifteen family members (hereinafter, the Mingo group) walked to defendant's home to fight two of defendant's friends, J and Wardell. When defendant arrived at his house with J and Wardell after a job interview, the Mingo group was there urging defendant and his friends to fight them and blocking defendant from going into his house. Defendant asked the Mingo group what was going on and they accused him of jumping a member of their group. Defendant denied having anything to do with a jumping, but the Mingo group continued to approach him saying they were "done talking."

Defendant's mother heard a commotion outside her house and went outside to find the Mingo group "ambushing" defendant and preventing him from coming into the house. She tried to calm everyone down but the Mingo group continued to try to fight, walking toward defendant and his friends, who backed away. Both defendant and his mother observed that members of the Mingo group were armed.

Defendant heard the sound of guns cocking. Wardell had a gun but he did not seem to know what he was doing with it. Defendant took the gun from Wardell, but continued to talk to the Mingo group and deny involvement in the jumping.

Defendant knew he was not allowed to possess a firearm, but he saw Wardell was struggling with the gun and defendant wanted to make sure they survived. Defendant pointed Wardell's gun at the Mingo group and told them to "back up." He heard shots fired by someone else.

When defendant's mother heard the shot, she urged defendant to run away because she believed the Mingo group was trying to kill him. She heard one member of the group, Ms. Mingo, tell her son to shoot defendant and saw Ms. Mingo chasing defendant and shooting at him.

Defendant dashed to the side of the street. When he observed that someone was still shooting at him, defendant shot back once and then the gun jammed. Defendant threw the gun back to Wardell to fix it and defendant ran away. Early the next morning defendant turned himself in to the police.

The State's witnesses provided a slightly different version of events:

Dazoveen Mingo and a group of family members walked to defendant's home to fight two of defendant's friends, J and Wardell. None of the Mingo group was armed. Defendant, J, and Wardell arrived at defendant's house about the same time as the Mingo group and Dazoveen noticed that defendant had a handgun in his belt.

The Mingo group began urging defendant and his friends to fight them, walking toward defendant and his friends, who backed away. Defendant removed the gun from his pants and pointed it while telling the group to "back up." Defendant then fired a shot into the air.

After defendant fired the shot, Dazoveen's aunt arrived with a gun. Dazoveen's mother grabbed the gun from the aunt and shot it into the air. Both defendant and a member of the Mingo group fired shots into the air three to four times each. After these shots, the Mingo group went home and called the police.

Defendant was indicted on 11 April 2016 for possession of a firearm by a felon under N.C.G.S. § 14-415.1 and tried before a jury beginning in March 2017. At the conclusion of all the evidence, defendant requested a jury instruction on justification as a defense to the charge of possession of a firearm by a felon. The trial court denied the request, and defendant objected. During deliberations, the jury sent a note asking the trial court for "clarification on whether or not [defendant] could be justified in possession of a firearm even with the stipulation [that he was] a convicted felon." In response, the trial court reread its original instruction on possession of a firearm by a felon to the jury.

The jury returned a verdict of guilty on the charge of possession of a firearm by a felon. Defendant appealed his conviction to the Court of Appeals, arguing that the trial court erred by denying his requested jury instruction on justification as a defense to possession of a firearm by a felon. The Court of Appeals concluded that defendant was entitled to a justification defense instruction. We affirm.

## II.    Standard of Review

We review a decision of the Court of Appeals' to determine whether it contains any error of law. N.C.R. App. P. 16(a); *State v. Malone,* 833 S.E.2d 779, 787 (N.C.

2019) (citing *State v. Brooks*, 337 N.C. 132, 149, 446 S.E.2d 579, 590 (1994)). A trial

court must give the substance of a requested jury instruction if it is "correct in itself

and supported by the evidence . . . ." *State v. Locklear*, 363 N.C. 438, 464, 681 S.E.2d

293, 312 (2009) (citing *State v. Harvell,* 334 N.C. 356, 364, 432 S.E.2d 125, 129

(1993)); *see also, e.g.*, *State v. Montague*, 298 N.C. 752, 755, 259 S.E.2d 899, 902 (1979)

(holding that if, there is sufficient evidence in the light most favorable to the

defendant to support a self-defense instruction, "the instruction must be given even

though the State's evidence is contradictory."). To resolve whether a defendant is

entitled to a requested instruction, we review de novo whether each element of the

defense is supported by the evidence, when taken in the light most favorable to

defendant. *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) ("When

determining whether the evidence is sufficient to entitle a defendant to jury

instructions on a defense or mitigating factor, courts must consider the evidence in

the light most favorable to defendant.").

## III.    Analysis

A.  Justification as a Defense to N.C.G.S. § 14-415.1

In North Carolina, "[i]t shall be unlawful for any person who has been

convicted of a felony to purchase, own, possess, or have in his custody, care, or control

any firearm or any weapon of mass death and destruction as defined in [G.S. § 14-

288.8(c)]." N.C.G.S. § 14-415.1(a) (2017). "The offense of possession of a firearm by a

convicted felon has two essential elements: (1) the defendant has been convicted of a

felony, and (2) the defendant subsequently possessed a firearm." *State v. Floyd*, 369 N.C. 329, 333, 794 S.E.2d 460, 463 (2016) (citation omitted).

Whether justification is a common-law defense to a charge of possession of a firearm by a felon under N.C.G.S. § 14-415.1 is a question of first impression in our Court. Previous cases addressing this issue at the Court of Appeals have assumed arguendo that justification is available as a defense to a charge of possession of a firearm by a felon, but the defense has never been recognized by this Court because none of the previous cases presented a situation in which a defendant would have been entitled to the instruction under the analysis the defendant proposed to the Court of Appeals. *See State v. Monroe*, 233 N.C. App. 563, 568–69, 756 S.E.2d 376, 379–80 (2014), *aff'd per curiam*, 367 N.C. 771, 768 S.E.2d 292 (2015) (surveying prior Court of Appeals cases).

We now hold that in narrow and extraordinary circumstances, justification may be available as a defense to a charge under N.C.G.S. § 14-415.1.[1]

---

[1] Some form of the defense of justification has been widely recognized by other jurisdictions as a defense to possession of a firearm by a felon. *See, e.g.*, *United States v. Gomez,* 92 F.3d 770, 774–75 (9th Cir. 1996); *United States v. Paolello,* 951 F.2d 537, 541 (3d Cir. 1991); *United States v. Singleton,* 902 F.2d 471, 472 (6th Cir. 1990); *United States v. Gant,* 691 F.2d 1159, 1161–62 (5th Cir. 1982); *Smith v. State*, 290 Ga. 768, 770, 723 S.E.2d 915, 918 (2012); *People v. Dupree*, 486 Mich. 693, 696, 788 N.W.2d 399, 401 (2010); *Humphrey v. Commonwealth*, 37 Va. App. 36, 44–48, 553 S.E.2d 546, 550–52 (2001).

We note that justification is an affirmative defense and does not negate any element of N.C.G.S. § 14-415.1. The justification defense "serves only as a legal excuse for the criminal act and is based on additional facts and circumstances that are distinct from the conduct constituting the underlying offense." *State v. Holshouser*, 833 S.E.2d 193, 197 (N.C. Ct. App. 2019) (citing *United States v. Deleveaux*, 205 F.3d 1292, 1297–98 (11th Cir. 2000)). Thus, like other affirmative defenses, a defendant has the burden to prove his or her justification defense to the satisfaction of the jury. *See State v. Sanders*, 280 N.C. 81, 85, 185 S.E.2d 158, 161 (1971) ("When defendant relies upon some independent, distinct, substantive matter of exemption, immunity or defense, beyond the essentials of the legal definition of the offense itself, the onus of proof as to such matter is upon the defendant." (quoting *State v. Johnson*, 229 N.C. 701, 706, 51 S.E.2d 186, 190 (1949))). *See also, e.g.*, *State v. Caldwell*, 293 N.C. 336, 339, 237 S.E.2d 742, 744 (1977) ("[I]nsanity is an affirmative defense which must be proved to the satisfaction of the jury by every accused who pleads it."); *State v. Caddell*, 287 N.C. 266, 290, 215 S.E.2d 348, 363 (1975) ("[Unconsciousness] is an affirmative defense; . . . the burden rests upon the defendant to establish this defense, unless it arises out of the State's own evidence, to the satisfaction of the jury.").

The Court of Appeals looked to the *Deleveaux* case for guidance as to how a defendant could invoke the defense of justification. We view the *Deleveaux* factors as

appropriate and adopt them here. [2] Accordingly, we hold that to establish justification

as a defense to a charge under N.C.G.S. § 14-415.1, the defendant must show:

> (1) that the defendant was under unlawful and present,
> imminent, and impending threat of death or serious bodily
> injury; (2) that the defendant did not negligently or
> recklessly place himself in a situation where he would be
> forced to engage in criminal conduct; (3) that the defendant
> had no reasonable legal alternative to violating the law;
> and (4) that there was a direct causal relationship between
> the criminal action and the avoidance of the threatened
> harm.

*Deleveaux*, 205 F.3d at 1297. Having determined that justification may be a defense

to N.C.G.S. § 14-415.1 and that a justification instruction must be given when each

*Deleveaux* factor is supported by evidence taken in the light most favorable to

defendant, we now turn to the specific facts of the case at hand.

B.  Application of the Defense

"When determining whether the evidence is sufficient to entitle a defendant to

jury instructions on a defense or mitigating factor, courts must consider the evidence

in the light most favorable to defendant." *State v. Mash*, 323 N.C. 339, 348, 372

---

[2] We recognize that the court in *Deleveaux* analyzed 18 U.S.C. § 922(g)(1), the federal equivalent of N.C.G.S. §14-415.1. The two statutes share similar language and restrict similar behavior. The federal statute makes it unlawful for a convicted felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). The North Carolina statute makes it unlawful for a convicted felon "to purchase, own, possess, or have in his custody, care, or control any firearm." Thus, we find the *Deleveaux* factors helpful and appropriate as a rubric for defendants to establish that they are entitled to an instruction on justification as a defense to a charge under N.C.G.S. §14-415.1.

S.E.2d 532, 537 (1988) (citations omitted). Thus, we examine whether evidence, considered in the light most favorable to defendant, tends to show each element of justification such that the trial court should have instructed the jury on justification as a defense.

First, defendant presented evidence that he was under unlawful and present, imminent and impending threat of death or serious bodily injury. When defendant arrived at his own house, there was a group of people ready to fight him, and those people were blocking him from going inside. The group accused defendant of jumping one of them and Ms. Mingo was shouting at her son to shoot defendant. While trying to explain that he had nothing to do with the underlying conflict and backing away from the group, defendant heard the sound of guns cocking and heard someone in the group say they were "done talking." Defendant testified that he saw his cousin struggling with his gun, and only then took the gun himself. While there is some evidence from the State that defendant was armed before the threat arose, we must view the evidence in the light most favorable to defendant, and defendant's evidence tends to show that he was under unlawful and present, imminent and impending threat of death or serious bodily injury.

Second, the evidence suggests that defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct. Defendant testified that when he arrived home after a job interview, a large group of people were there looking for a fight. Defendant's mother testified that the group was

blocking defendant from going into his house and that from the moment he exited his car they were challenging him to fight. Although defendant tried to explain that he was not involved in the underlying conflict from earlier that day and physically backed away from the group, the situation escalated rapidly. Considering the evidence in the light most favorable to defendant, we conclude that a jury could find that he did not negligently or recklessly place himself in a situation where he would be forced to arm himself simply by arriving at his home and trying to explain himself to the group who were blocking him from entering his home.

Third, some evidence supports defendant's claim that he had no reasonable legal alternative to violating the law. Defendant was unable to go into his home when he arrived because the group blocked his path, and he was already out of the car and unable to drive away when the group said they were "done talking." Defendant testified that after he heard guns being cocked, he looked over to see his cousin struggling with the gun. Again, considering the evidence in the light most favorable to defendant, a reasonable jury could conclude that it was too late to call 911 and that running away would have put him at greater risk of being shot. A jury could have concluded that defendant had no reasonable legal alternative to violating the law.

Fourth and finally, there was evidence tending to show a direct causal relationship between the criminal action and the avoidance of the threatened harm. According to defendant, he only took possession of the gun when he heard other guns being cocked, and he gave the gun back to his cousin when it jammed and he was able

to run away. Defendant argued that having the gun allowed him to create space enough to retreat and avoid being jumped or shot by the group. The State presented evidence to the contrary, but when considering the evidence in the light most favorable to defendant, a jury could find that his gun possession was directly caused by his attempt to avoid a threatened harm.

Thus, viewed in the light most favorable to defendant, we conclude that he presented sufficient evidence of each *Deleveaux* factor to require the court to instruct the jury on justification as a defense to the charge of possession of a firearm by a felon. We emphasize that we are not determining whether defendant here was actually justified in his possession of the firearm, as the State did present relevant conflicting evidence on several points. We hold only that he was entitled to have the justification defense presented to the jury.

Having determined that defendant was entitled to a jury instruction on justification as a defense, we must now evaluate whether the trial court's failure to give this instruction was prejudicial to defendant. "[A] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. . . ." N.C. Gen. Stat. § 15A-1443(a) (2017).

The jury was not instructed on justification as a defense to the possession of a firearm by a felon and it ultimately convicted defendant on that charge. But, during

deliberations, the jury sent a note to the trial court explicitly asking about the availability of a justification defense for the charge of possession of a firearm by a felon. This question indicates, at a minimum, that the jury was concerned about this legal issue. We conclude that the trial court's failure to give a justification instruction created a reasonable possibility that the jury would have reached a different result.

## IV.    Conclusion

We hold that the Court of Appeals did not err by recognizing the availability of a common law justification defense for a possession of a firearm by a felon charge under N.C.G.S. § 14-415.1 nor by prescribing the *Deleveaux* factors as the framework within which to determine whether the defense should have been presented to the jury. Having considered the evidence in the light most favorable to defendant, we hold that there is sufficient evidence of each *Deleveaux* factor to require a justification instruction be given to the jury. Because the failure to give that instruction was prejudicial, defendant is entitled to a new trial, and we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice MORGAN dissenting.

While I agree with my distinguished colleagues of the majority that our Court should avail itself of the opportunity that this case presents to expressly recognize and establish a defense of justification as an affirmative defense which is available to a criminal defendant who is accused of the offense of possession of a firearm by a felon, I respectfully dissent on the ground that the majority has formalized a threshold which is perilously low for the requirements of this affirmative defense to be met. In this case of first impression in this Court, while the majority states that this affirmative defense is now available "in narrow and extraordinary circumstances," in my view defendant here did not present evidence of circumstances at trial which were sufficient to qualify him for the affirmative defense at issue. Therefore, while I agree with the decision of the majority to establish a defense of justification which is available as an affirmative defense to a criminal defendant who is charged with the offense of possession of a firearm by a felon, I must dissent from the majority's decision due to my belief that defendant in the instant case did not present evidence sufficient to show each necessary element to warrant a jury instruction on justification as a defense.

In welcoming the establishment of the justification defense for a criminal defendant in the state courts of North Carolina who is charged under Section 14-415.1 of the General Statutes of North Carolina, I agree with the majority's premise

that our courts should implement the four factors enunciated in *United States v. Deleveaux*, which a defendant must satisfy in order to establish justification as a defense:

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

205 F.3d 1292, 1297 (11th Cir. 2000). I also concur with the majority's recognition of the well-established principle, as cited in its opinion, that an appellate court reviews de novo whether or not a defendant is entitled to a requested jury instruction on an affirmative defense upon examining the evidence in the light most favorable to the defendant so as to determine whether each element of the affirmative defense is supported by the evidence.

Within the Felony Firearms Act, codified in Article 54A of the North Carolina General Statutes, is N.C.G.S. § 14-415.1. Defendant was convicted in the present case of possession of a firearm by a felon, in violation of N.C.G.S. § 14-415.1. The offense is established in § 14-415.1(a), which states in pertinent part: "It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm." In according the word "any"—which is used twice in the excerpted passage of the statute—its plain and simple meaning, no

person convicted of a felony is exempted from the statutory reach of this offense. Likewise, no firearm is excluded from the application of this criminal law. Inherent in the usage of such unequivocal and unambiguous language, and reinforced by the dearth of any terminology to compromise or to weaken its directness, is the clarity of the legislative intent undergirding N.C.G.S. § 14-415.1(a) that there are no exceptions to the operation of the statute. Therefore, while I agree with the majority's presumption that this Court has the authority to judicially carve out an affirmative defense to the criminal statutory provision,[1] nonetheless I am compelled to tailor this newly formalized affirmative defense of justification as a defense to N.C.G.S. § 14-415.1 in such a way that it is appropriately only available to criminal defendants in the type of narrow and extraordinary circumstances which most closely retain the original concept of the statute's lack of any exceptions.

In this case of first impression, as this Court adopts the standards of the federal court case *United States v. Deleveaux* to establish the affirmative defense of justification in North Carolina state court cases involving the criminal charge of possession of a firearm by a felon, it would be prudent to examine the federal courts' approach to the utilization of the defense in circumstances where, as in the instant case, the legislative enactment comprehensively bars a convicted felon from acquiring a firearm by any means. "To ensure that this strict prohibition is effectuated, we

---

[1] "[S]tatutes rarely enumerate the defenses to the crimes they describe." *United States v. Panter*, 688 F.2d 268, 270 (5th Cir. 1982) (footnote omitted).

should require that the defendant meet a high level of proof to establish the defense of justification." *United States v. Paolello*, 951 F.2d 537, 541 (3rd Cir. 1991). The Seventh Circuit in *United States v. Perez* emphasized that, other than when a felon who is not engaged in criminal activity grabs a gun which is actively threatening harm, a justification defense "will rarely lie in a felon-in-possession case" and is available "*only in the most extraordinary circumstances.*" 86 F.3d 735, 737 (7th Cir. 1996) (emphasis added). "A 'mere scintilla' of evidence supporting a defendant's theory . . . is not sufficient to warrant a [justification] defense instruction." *United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993). Other federal courts have reached similar conclusions which require strict standards for this affirmative defense. *See, e.g., United States v. Singleton*, 902 F.2d 471–72 (6th Cir. 1990) (holding "that a defense of justification may arise *in rare situations*") (citation omitted) (emphasis added); *United States v. Rice*, 214 F.3d 1295, 1297 (11th Cir. 2000) (finding that the justification defense "*is reserved for 'extraordinary circumstances'*") (citation omitted) (emphasis added).

In examining the trial evidence when taken in the light most favorable to defendant in order to determine whether or not the evidence was sufficient to entitle him to a jury instruction on justification as a defense to the criminal offense of possession of a firearm by a felon as established by N.C.G.S. § 14-415.1(a), in my view the first factor—"the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury"—and the third factor—"the

defendant had no reasonable legal alternative to violating the law"—were insufficiently shown by defendant to establish the affirmative defense and to require an instruction to the jury on it. Stated another way, because the defendant did not show sufficient evidence of all four of the *Deleveaux* factors, the circumstances presented at trial were not sufficiently narrow and extraordinary to support a defense of justification.

While the circumstances described in the testimony presented at trial concerning the two antagonistic groups of people confronting each other in an outdoor environment is a disturbing situation, they do not rise to a level which constitutes sufficient evidence to satisfy all of the required *Deleveaux* factors. Even taking the evidence in the light most favorable to defendant, such evidence falls short of the high standards articulated in the cited case law. The evidence at trial showed that defendant was engaged in discussion with the members of the "Mingo group" during the entirety of the confrontation. While there were angry responses to defendant's statements from the "Mingo group" members and gunshots fired by unknown individuals within the two groups, defendant extricated himself from the unpleasant situation simply by running away from it. As defendant put it, "I just run home. Not run home, but run away." Hence, I am not persuaded that it was necessary for defendant to possess a firearm in order to escape from the unlawful and present, imminent, and impending threat of death or serious bodily injury. Also, the trial evidence offered by defendant himself demonstrated that there was no need for him

to possess a firearm during this altercation: defendant's cousin Wardell Sherill had a firearm which he displayed, defendant "hurried up and snatched it out of his hand" after hearing "people cock their guns back" because "Wardell Sherill is my little cousin," and defendant subsequently returned the gun to its owner as he "threw it to Mr. Sherill." Through this testimony of defendant, it is apparent that he was not in a position in which he had no reasonable legal alternative to violating the law, because after he unilaterally and voluntarily took possession of the firearm from its owner, defendant unilaterally and voluntarily returned the firearm to its owner when defendant was finished with it. "Generalized fears will not support the defense of justification." *United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989). As stated in *United States v. Lewis*:

> [a justification defense] does not arise from a "choice" of several sources of action; it is instead based on a *real emergency*. It may be asserted only by a defendant who was confronted with a crisis as a personal danger, a crisis that did not permit a selection *from among several solutions*, some of which would not have involved criminal acts.

628 F.2d 1276, 1279 (10th Cir. 1980) (emphasis added), *cert. denied*, 450 U.S. 924 (1981).

It is needless for me to address whether any of the other *Deleveaux* factors exist, since pursuant to my analysis regarding the sufficiency of the evidence to invoke the affirmative defense of justification, the first and third factors fail to exist, and all of them must be present for the jury instruction to be given.

I would readily join the majority in the conclusion that the defense of justification as an affirmative defense to a charge of possession of a firearm by a felon under N.C.G.S. § 14-415.1 should be deemed to be formally established by virtue of the present case. However, the "rare" and "most extraordinary" circumstances which courts routinely require to be shown through a "high level of proof to establish the defense of justification" have not been satisfied by defendant in this case in light of the clear intent of the legislature to create a pervasive denial of the possession of firearms by persons convicted of felony offenses and the resulting judicial responsibility "to ensure that this strict prohibition is effectuated." Through the majority's determination that defendant here merited a jury instruction at trial on the affirmative defense of justification on the basis of the evidence presented in this case, it has set a standard in this case of first impression which is far too low to represent the appropriate evidentiary threshold. While the majority purports to have copiously constrained the availability of the affirmative defense of justification in cases involving N.C.G.S. § 14-415.1 to "narrow and extraordinary circumstances," I disagree. Accordingly, I would reverse the decision of the Court of Appeals on the basis that there was not sufficient evidence to entitle defendant to a jury instruction on justification as a defense to the charged offense under N.C.G.S. § 14-415.1 of possession of a firearm by a felon.